**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

Laura Cyr, an individual,
Plaintiff,

v.

Reliance Standard Life Insurance Company, an Illinois corporation, and Susan Strickler, an individual,
Defendants.

2:23-cv-06286-DSF-RAO

Findings of Fact and Conclusions of Law After Bench Trial on Administrative Record

This is an action for benefits under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq. Plaintiff Laura Cyr contends she is entitled to long-term disability benefits under the terms of the long-term disability policy Defendant Reliance Standard Life Insurance Company (RSL) issued to her former employer, Channel Technologies, Inc. (CTI). A bench trial on the administrative record was held on March 31, 2026. After consideration of the parties' trial briefs, oral arguments, and the evidence in the Administrative Record (AR),[1] the Court makes the following Findings of Fact and Conclusions of Law.

[1] The Court refers to pages from the Administrative Record as "AR __." RSL has also filed separate documents it asserts are part of the "old" or "original" claim (OC) file. Dkt. 124 (Defs.' Notice of Lodging of the Administrative R.) at 1. The pages of the OC, as filed, are numbered consecutively following the page numbers in the AR. The parties do not dispute that the documents

# I. Findings of Fact

## A. The Long-Term Disability Plan

1. Cyr was employed by CTI until she ceased working in 2000. AR 376, 1875. CTI established an ERISA-governed plan (the Plan) that provided long-term disability (LTD) benefits to eligible employees through a group insurance policy issued by RSL. AR 1-29, 284-287. RSL is the named claims administrator for benefits under the LTD plan. AR 17.

2. The Plan provides that RSL "will pay a monthly benefit if an insured: (1) is Totally Disabled as the result of a Sickness or Injury covered by this policy; (2) is under the regular care of a Physician; (3) has completed the Elimination Period; and (4) submits satisfactory proof of Total Disability to [RSL]." AR 21.

3. Total disability means that, "as a result of an Injury or Sickness," during the period a monthly benefit is payable, the insured "cannot perform the material duties of his/her regular occupation." AR 12.

    a. An insured who is "Partially Disabled" is considered "Totally Disabled." Id. Partial Disability means that, "as a result of an Injury or Sickness an Insured is capable of performing the material duties of his/her occupation on a part-time basis or some of the material duties on a full-time basis." Id.

    b. Sickness is defined as "illness or disease causing Total Disability which begins while insurance coverage is in effect for the Insured." Id. "Injury" means "bodily injury resulting directly from an accident, independent of all other causes." AR 11.

contained in the OC are part of the AR, and they both cite the OC as such in their briefing. Therefore, the Court cites pages from the OC using the same format as it does pages in the AR.

4. The policy provides that benefits will stop on "the date the Insured ceases to be totally disabled." AR 22.

**B. Cyr's Employment**

5. Until 2000, Cyr was employed as Vice President of Administration at a subsidiary of CTI. AR 376, 1875.

6. Cyr reported to the President of the company, and her job duties included "management of all the various departments with special emphasis on formulating of financial plans and policies, and providing overall direction for accounting and budget functions." AR 1875.

7. As part of an occupational assessment for Cyr's job, RSL obtained a generic occupational description for a Vice President. AR 1958. The occupational description states that a Vice President's role includes, among other things, "[p]lan[ning], direct[ing], and coordinat[ing] operational activities at the highest level[.]" Id. RSL classified Cyr's regular occupation as Vice President of Administration as "sedentary." AR 1961. According to the insurer's Occupational Requirements document for a Vice President, Cyr's sedentary work required occasionally lifting up to 10 pounds. Id.

8. Cyr's position required both cognitive function and sedentary capacity. See AR 1875; 1958-61.

9. Cyr's job description and RSL's occupational description indicate that the material duties of Cyr's occupation included: (1) managing various departments; (2) formulating plans and policies; (3) directing accounting functions; (4) directing budget functions; (5) planning, directing, and coordinating operational activities; (6) formulating and administering company policies; and (7) developing long-range goals and objectives. AR 1875; AR 1958-61.

10. According to the occupational description employed by RSL, the physical demands of Cyr's occupation included occasionally lifting

up to 10 pounds, frequently talking and hearing, occasionally reaching, handling, and fingering. AR 1961.

## C. Cyr's Medical Conditions and Initial LTD Claim

11. After separating from her employment in 2000, Cyr submitted a disability claim based on a back condition stemming from a previous automobile accident. AR 2002-03, 2012. RSL approved Cyr's claim and began paying disability benefits in 2001. AR 2397.

12. During the time RSL was paying benefits to Cyr, she asserted additional grounds for disability, with diagnoses including, but not limited to: cervical disc disease, AR 2165; multiple sclerosis (MS), AR 3151; complex regional pain syndrome/reflex sympathetic dystrophy, AR 468; seizure disorder, AR 2634; strokes, AR 904; other orthopedic complications, AR 956; and traumatic brain injury (TBI), AR 561, 974.

13. From 2001 to 2021, RSL continued to find Cyr met the definition of total disability. For example, during a 2014 review, RSL acknowledged Cyr's MS and seizure disorder diagnoses and found that a "[l]ack of consistent work function [was] supported." AR 2874.

14. RSL cites Cyr's "increasingly complex and evolving medical complaints" and "the continued certification of disability by her primary care physician, Dr. Barbara Hrach" as its grounds for continuing to pay her claim. Dkt. 129 (Defs.' Br.) at 6.

15. Cyr's claim was eventually transferred to RSL's Extended Duration Unit. See AR 218, 263. To verify continued disability and establish entitlement to ongoing benefits, Cyr was required to provide updated documentation on an annual basis. AR 218.

16. In February 2021, RSL requested updated records from Cyr and her health providers, covering a period starting January 1, 2019 up to the date of the request. AR 280-81. RSL received updated records from many of Cyr's providers. AR 226-228, 243-244.

17. Cyr's psychiatrist Dr. Early and therapist Neil Friedman did not provide records for RSL's review. See AR 150, 281-83, 681. Friedman explained in a letter to RSL that he was not treating Cyr's neurological issues directly, and that her neurologist and physicians were the appropriate authorities to assess her working ability. AR 681.

18. During the time covered by the February 2021 records requests, multiple doctors documented Cyr's condition and symptoms and provided medical records to RSL, including: (1) her California-based primary care physician since 1999, Dr. Barbara Hrach, AR 2012; (2) her neurosurgeon Dr. Richard Chung, AR 2844; (3) her treating physician in Colorado since 2016, Dr. Kelley Glancey, and Dr. Glancey's colleagues at Byers Peak Family Medicine, AR 489, 531; (4) her neurologist since 2019, Dr. Michael Gibbs, AR 490; (5) her orthopedist since 2019, Dr. Premjit Deol, AR 606-607; and (6) Dr. Michael Pifer of Ortho Surgical Practice in Santa Barbara, AR 581-590. Cyr also submitted self-reported information. AR 489.

19. In 2019, Cyr was involved in an accident where a golf cart rolled over her, resulting in multiple fractures requiring surgery for her pelvis and arm. AR 615, 637-41. In progress notes, Dr. Deol noted that Cyr experienced "persisting numbness in her fingers after surgery" and "intermittent paresthesias of her left lateral upper leg." AR 620-23. Dr. Deol diagnosed Cyr with left leg paresthesias and numbness of her right hand, AR 612-14, which Dr. Deol noted was worsening during a December 2019 visit, AR 610. Still, Dr. Deol included in his notes that Cyr was doing "remarkably well" and "ha[d] been doing some hiking and even just this weekend skied for about 5 hours." Id.

20. Dr. Glancey and her colleagues at Byers Peak Family Medicine reported that Cyr experienced continuing pain and seizure activity. See AR 536-37, 542, 1175. Cyr saw Dr. Glancey or one of her colleagues nearly monthly during the reporting period. See

528-80.[2] Throughout their reports, her providers consistently noted headaches and pain in her arm. See id. While some reports note improvements in pain levels—AR 538-40, 550, 566-70—her providers consistently note headaches and left arm pain that were at times "significant," "severe," or worsening—AR 544-48, 570, 576. Dr. Glancey noted in 2019 that Cyr "ha[d]n't been able to read well." AR 576.

21. Records from Dr. Gibbs in 2020 indicate a confirmed diagnosis of non-epileptic seizures, though he noted her EEG was normal. AR 511. However, Dr. Gibbs questioned whether Cyr's MRI images supported an MS diagnosis, writing in a letter to Dr. Hrach that he "suspect[ed] [MS] was a wrong diagnosis made many years ago." AR 508.

22. In 2020, Cyr's primary care physician, Dr. Hrach, submitted an updated attending physician's statement (APS). AR 468-79. The form listed diagnoses of cervical disc disease, MS, complex regional pain syndrome, and seizure disorder as the bases for Cyr's disability claim. AR 468. She reported symptoms including headaches and arm pain. Id. Dr. Hrach checked boxes indicating that Cyr had "retrogressed" and should "cease work." AR 469, 982. Dr. Hrach described restrictions imposed on Cyr as "no driving, lifting," or "prolonged standing." AR 469. In 2020, Dr. Hrach indicated that Cyr could not "resume some/all work duties while continuing treatment." Id. Dr. Hrach's notes also stated that Cyr could sit for 10 hours, stand for four hours, and walk daily. AR 472. She indicated that Cyr could occasionally lift up to one pound and occasionally carry less than or equal to 10 pounds. Id. Dr. Hrach noted that Cyr had no psychiatric impairment, visual impairment, or hearing impairment. AR 470-71.

23. In an Activities of Daily Living Questionnaire dated February 21, 2021, Cyr reported that her medical conditions caused cognitive

[2] There is a gap between October 2019 and February 2020. See AR 531-33.

impairments affecting communication, short-term memory, comprehension, and reading. AR 489. The form also indicated she was taking several medications daily, including Keppra, gabapentin, carbamazepine, baclofen, and fentanyl. Id. She reported activities including sewing sometimes, golfing sometimes, skiing sometimes, and participating in pool therapy. AR 495. She noted that she spent 40 minutes on a computer once monthly. Id.

**D. RSL Terminates Benefits; Cyr Appeals**

24. In a letter dated June 4, 2021 (Initial Denial Letter), RSL notified Cyr that her LTD benefits would be terminated. AR 284-85. RSL wrote that it had "reviewed all of the information in [Cyr's] claim file," and found that she no longer met the definition of Total Disability under the policy. Id. The letter stated:

> A staff Medical Specialist reviewed all of the available information on file. The staff Medical Specialist noted that Dr. Deol noted a follow-up visit dated 12/4/2019 that states in part "She has actually been doing remarkably well and has reported that she has been doing some hiking and even just this weekend skied for about 5 hours. She says she gets a little bit of soreness, but not enough to stop her from being active." In addition, records from Family Medicine note that your chronic pain is unchanged but you were feeling good overall and seizures were due to medication. The Attending Physician Statement signed by Dr. Hrach on March 13, 2020 states that you are capable of sitting for 10 hours at a time, with walking and standing for 1 hour at a time.
>
> Based on the totality of information, the staff Medical Specialist concluded that you are capable of sedentary work activity.
>
> . . .

> As your pre-disability occupation is sedentary, you are no longer precluded from performing the material duties from regular occupation. Therefore, you no longer meet the above mentioned definition of Total Disability.

AR 285.

25. The letter did not address Cyr's cognitive abilities. See AR 284-85.

26. Over the year following RSL's termination of her claim, Cyr, her doctors, and her attorneys provided additional information to support reinstatement of her benefits.

27. Immediately after RSL terminated her claim, Cyr submitted, or caused to be submitted, letters from her physicians, attending physician statements, progress notes, clinical notes, and other medical records to show she remained entitled to LTD benefits. See AR 238-42.

28. On May 31, 2022, after Cyr retained counsel, her attorneys submitted an ERISA appeal that included legal argument and updated attending physician statements, letters from Cyr's doctors, and progress notes. AR 1146-85.

29. In a letter dated June 8, 2021, Dr. Hrach offered her medical opinion and asked that RSL reconsider denial of Cyr's LTD benefits. AR 774. Dr Hrach acknowledged that she had previously stated Cyr could sit for 10 hours a day, but that after discussing the matter with Cyr "it is apparent that she is not able to sit for any length of time." Id. Dr. Hrach stated that Cyr "suffers from chronic neck pain, has reflux sympathetic dystrophy in her arm, has chronic back and pelvic pain, and is on high doses of fentanyl chronically to control her pain." Id. Dr. Hrach opined that Cyr was unable to perform her job duties, and that her physical and mental conditions were worse than at

the onset of her disability. Id. In an APS form dated June 22, 2021, Dr. Hrach listed the same diagnoses as in 2020 but added the symptom of "difficulty concentrating." AR 980. She again indicated that Cyr had "retrogressed" and should "cease work" with similar restrictions on driving, lifting, and standing. AR 982. For psychiatric impairment, Dr. Hrach checked a box to indicate that Cyr was "able to engage in only limited stressful situations and engage only in limited interpersonal relations" due to her medications and seizures. AR 984.

30. After RSL terminated her benefits, Cyr saw Dr. Deol for an appointment on June 9, 2021. AR 949-51. In his notes, Dr. Deol wrote that Cyr "[brought] to our attention that our previous note had indicated she had skied for five hours" but that "[u]nfortunately, that was a mistake on my part and I misdocumented that she was active for five hours over the course of the month, but not able to ski for five hours continuously." AR 950. He opined that she was "pretty limited," having "trouble even with sedentary activities," and was "permanently disabled." Id.

31. The record also contains an updated APS form completed by Dr. Glancey, dated July 19, 2021. AR 1720-25. It indicates that Cyr was last examined on July 8, 2021, that she has cervical disc disease, MS, RSD, headache symptoms, acute pain, and seizures, that she can sit for a maximum of 45 minutes in a day, and that the level of functional impairment is to "cease work." AR 1720.

32. Additionally, Cyr submitted an updated APS form from Dr. Gibbs dated June 9, 2021. AR 1728-35. It lists diagnoses of MS and seizures, and symptoms including memory loss, speech difficulty, and left arm and leg pain. AR 1728. Dr. Gibbs indicated Cyr's progress was "unchanged" and circled that she should "cease work." AR 1730.

## E. The Burns Report

33. In response to Cyr's appeal, RSL commissioned a peer review through a third-party vendor, who selected Dr. Norman Burns to review Cyr's records. AR 1233-39.

34. Dr. Burns conducted a paper review and summarized his findings in a report (the Burns Report) in which he responded to eight review questions covering topics including Cyr's medical conditions, prognosis, continuing impairment, and work capacity. See AR 1271-73.

35. Responding to the review question asking him to address medical conditions impacting Cyr's status, Dr. Burns wrote:

> Based on the provided medical records, the claimant has neurologic diagnoses consisting of epileptic and non-epileptic seizures and possible multiple sclerosis. Documentation provided indicates seizures are well controlled with occasional non-epileptic events related to stress and pain. Her multiple sclerosis has been stable for years with unchanged MRIs. An ongoing neurologic impairment from 6/10/2021 and continuing is not supported.

AR 1271.

36. Responding to the review question asking if there is "medical data to substantiate the presence of complaints as of 6/10/2021 going forward," Dr. Burns responded:

> The medical records indicate chronic and diffuse multi focal pain in the neck, back, and arms. There are extensive treatment notes from pain management and orthopedic surgeons. Ongoing neurologic complaints of intermittent seizures are documented, though are non-epileptic and occur every few months. A neurologic impairment is not supported.

AR 1271.

37. Another review question asked if Cyr "has work capacity on a full time consistent basis as of 6/10/2021 going forward," prompting Dr. Burns to state his opinion based on the definition of a sedentary occupation. AR 1272. Sedentary was defined as:

> Exerting up to 10 pounds of force occasionally and/or a negligible amount of force frequently to lift, carry, push, pull, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. . . . Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

Id. Dr. Burns responded, "From a neurologic perspective the claimant is considered to have full time work capacity." Id.

38. Dr. Burns was not asked to consider the cognitive demands of Cyr's occupation, nor did he address her material duties. See AR 1271-72. He addressed only whether she had sedentary capacity. AR 1272.

39. RSL sent the Burns Report to Cyr's counsel in a letter dated June 28, 2022. AR 1266. Cyr was given until July 19, 2022, to respond to the report with additional information. Id.

40. On July 19, 2022, Cyr's attorneys responded to RSL, submitting a letter from Dr. Hrach and documentation from other physicians treating Cyr. AR 1418-20. In her letter, Dr. Hrach expressed disagreement with findings in the Burns Report. AR 1464. Of Cyr's condition, she wrote:

> [Cyr] has been a patient in my Internal Medicine practice for over 20 years. Over these years I have observed her physical condition deteriorate. She

> suffers from chronic cervical radicular pain, chronic migraines and a complex regional pain syndrome involving the left upper extremity. She has been on high doses of narcotics for many years to control this pain as well as trials of various neuroleptics, triptans, CGRP inhibitors, muscle relaxers and anti-inflammatory medications. Despite these, she continues to suffer from intractable pain and the inability to mobilize her neck or left arm. She has had multiple fractures including a recent pelvic fracture that resulted in bilateral SI joint instability requiring bilateral SI joint fusion surgeries last year. She also has been diagnosed with multiple sclerosis and seizure disorder and is on chronic medication for these conditions. She contacted me just last week describing a recent increase in seizure activity and flair [sic] up of the CRPS symptoms in her left arm.

Id.

41. Dr. Hrach also noted the Burns Report excluded certain conditions, including Cyr's "complex regional pain syndrome, migraine headaches, cervical fusion with chronic radicular pain or pelvic fracture and SI joint instability diagnoses." AR 1464. She stated that Dr. Burns' statements—that (1) Cyr's seizure disorder was well controlled, (2) she had no upper extremity impairment, and (3) had full time work capacity—were false and contradicted Dr. Hrach's previous documentation. Id. Dr. Hrach reiterated Cyr was "unable to sit for any length of time." Id. Dr. Hrach added that Cyr's medications "directly affect her cognitive function." AR 1465.

42. Cyr submitted an APS from Dr. Glancey, as part of the July 19, 2022 submission, which recited Cyr's various diagnoses, stated she "can sit for a maximum of 45 minutes in a day," and noted the level of functional impairment was to "cease

work." AR 1467. The APS provided that Cyr's progress remained "unchanged." Id.

43. As part of the July 19, 2022 submission, Cyr also submitted an APS dated June 9, 2021 and progress notes from her neurologist, Dr. Gibbs. AR 1728-1735. Dr. Gibbs cited current symptoms from Cyr's diagnoses, including seizures, memory loss, speech difficulty, and pain in her left arm and leg. AR 1728. Dr. Gibbs also stated in the APS that Cyr could sit for 45 minutes at a time up to a total of one hour per day, that her functional impairment is to "cease work" and that her progress was "unchanged." AR 1730. Updated records from Dr. Gibbs indicated that, during 2021 and 2022, Cyr experienced episodes of loss of awareness noted by her family, migraines, an exacerbation of her reflex sympathetic dystrophy, and functional speech disorder. AR 1739-45.

44. Dr. Burns did not change his findings after the new information was submitted, writing that the "additional records [did] not alter [his] opinion." AR 1802-03.

45. On July 22, 2022, Cyr submitted a letter (the Gibbs Letter) signed by her neurologist Dr. Gibbs. AR 1794-96. The letter stated that Cyr had ongoing "disabling impairments" of reflex sympathetic dystrophy, "non-responsiveness/loss of awareness," migraine headaches, and functional speech disorder, and opined that "[n]one of these impairments is well controlled and all preclude Ms. Cyr from performing the material duties of her regular occupation." Id. Additionally, the letter stated that Cyr's medications impaired her ability to work. AR 1795. Dr. Gibbs opined that Cyr was "unable to perform the material duties of her regular occupation." Id.

46. The Gibbs Letter was drafted by Cyr's attorneys and signed by Dr. Gibbs without changes. Compare Dkt. 129-1

(Bernacchi Decl.) ¶ 12, Ex. 5, with AR 1794-96. As part of the tort action related to this case, Dr. Gibbs testified in a deposition that he "[did not] have any independent recollection of writing [the Gibbs Letter], but, clearly, [he] signed it." Dkt. 141-5 (Gibbs. Dep.) 76:4-6.

### F. RSL Denies Cyr's Appeal

47. In a letter dated July 26, 2022 (Final Denial), RSL informed Cyr it was upholding the termination of her LTD benefits. AR 303-09. In the Final Denial, RSL stated it had "concluded that the information does not substantiate a medical condition at a level of severity, precluding Ms. Cyr from performing the full-time material duties of a sedentary occupation beyond June 10, 2021." AR 303. RSL referenced the occupational assessment for Cyr's position as Vice President of Administration, concluding that her "occupation was best classified at a sedentary physical exertion level." AR 304. RSL stated that it had, accordingly, "utilized the vocational evidence combined with the medical records . . . to determine if [Cyr] qualified for LTD for a 'Total Disability' from her sedentary level Regular Occupation." AR 304-05.

48. In the Final Denial, RSL summarized medical documentation from January 1, 2021 to the date of the letter. AR 305. It wrote that Cyr had "ceased working due to a history of multiple sclerosis, chronic neck and back pain." Id. It stated that the following diagnoses had been made or documented during that period by Cyr's various physicians:

- Chronic pain due to trauma
- Complex regional pain syndrome
- Long term drug therapy
- Multiple sclerosis
- Seizure disorder
- Sacroiliitis

- Underweight
- Non-epileptic convulsion
- Choreiform movements
- Reflex sympathetic dystrophy
- Trigeminal neuralgia of the left side of face
- Migraine headache
- Chronic ulnar nerve paresthesias

AR 305-08. RSL then summarized its findings of Cyr's medical documentation, writing:

> In reviewing the medical documentation, the level of impairment specific to Ms. Cyr's history of multiple sclerosis, neck and back pain was not consistent with an inability to perform sedentary work function. Specifically, a CTA of the Head/Neck conducted May 10, 2021, revealed no evidence of acute infarct or large vessel occlusion. In addition, following the joint fusion conducted May 10, 2021, a Neurology evaluation dated May 11, 2021, with Dr. Jones noted intermittent deficits in strength and sensation with no specific consistent localized neurological deficits. While we also acknowledge multiple Neurology evaluations with Dr. Gibbs from April 2, 2021, through April 13, 2022, noting complaints of migraine headaches, there is no indication of an impairment precluding Ms. Cyr's ability to perform the material duties of her regular occupation.

AR 307.

49. RSL stated that it was "not disputing that Ms. Cyr may have symptoms associated with a history of multiple sclerosis, chronic neck and back pain" but that its "position

is that the level of severity associated with these symptoms, do not preclude her from sedentary work function." AR 308. RSL then cited the opinion of Dr. Burns as confirmation of its findings. Id. RSL wrote that it had concluded Cyr was not Totally Disabled and therefore not entitled to LTD benefits. Id.

50. In its Final Denial, RSL did not make any statements or determinations about Cyr's cognitive function or the cognitive demands of her regular occupation. See AR 303-09.

## II. Conclusions of Law

After considering the parties' oral arguments and trial briefs, the Court draws the following conclusions of law:

1. Any conclusion under this category that is a finding of fact is also adopted as a finding of fact.

2. This matter is properly before the Court pursuant to Federal Rule of Civil Procedure 52. Rule 52 provides that "[i]n an action tried on the facts without a jury or with an advisory jury, the Court must find the facts specially and state its conclusions of law separately." Fed. R. Civ. P. 52(a)(1). This case is governed by ERISA because it involves an employee welfare benefit plan within the meaning of that statute.

3. The Court reviews the denial of benefits de novo. Dkt. 120. Pursuant to its de novo review, the Court has "examine[d] the administrative record without deference to [RSL's] conclusions to determine whether [RSL] erred in denying benefits." Collier v. Lincoln Life Assurance Co. of Bos., 53 F.4th 1180, 1182 (9th Cir. 2022).

4. The Court is not required to accord special deference to the opinions of treating physicians based on their status as treating physicians. Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003). Instead, opinions must "be accorded whatever

weight they merit." Jebian v. Hewlett-Packard Co. Emp. Benefits Org. Income Prot. Plan, 349 F.3d 1098, 1109 n.8 (9th Cir. 2003). However, a court may give greater weight to a treating physician's opinion where it is evident a particular physician has had a "greater opportunity to know and observe the patient than a physician retained by the plan administrator" who conducts a file review. Id. (citation omitted).

5. "[B]ecause the relevant provisions [of the LTD policy] focus on [Cyr's] ability to perform the acts necessary to carry out her [regular] occupation, whether [Cyr] is 'disabled' must be measured by her functional capacity as compared to the duties of her [regular] occupation." Brown v. Unum Life Ins. Co. of Am., 356 F. Supp. 3d 949, 964 (C.D. Cal. 2019).

6. It is Cyr's burden to prove "by a preponderance of the evidence that [she] was disabled under the terms of the plan." Armani v. Nw. Mut. Life Ins. Co., 840 F.3d 1159, 1163 (9th Cir. 2016). To meet that burden, she must show not only "the mere existence of an impairment," but that the "impairment is disabling." Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) (citation omitted).

7. The relevant issue before the Court on de novo review is whether the Cyr's "symptoms rose to the level of total disability" as defined in the policy. Muniz v. Amec Cost. Mgmt., Inc., 623 F.3d 1290, 1296 (9th Cir. 2010). To that end, "[r]easoned assessments of what [Cyr] can and cannot do are given greater weight than mere statements of medical diagnoses." Brown, 356 F. Supp. 3d at 964.

8. The Court has considered "only the rationales [RSL] relied on in denying benefits and [has not] adopt[ed] new rationales that the claimant had no opportunity to respond to during the administrative process." Collier, 53 F.4th at 1182.

### A. Extra-Record Evidence, Supplements, Request for Judicial Notice

9. Both parties have submitted evidence not included in the administrative record as filed.

10. On de novo review, the Court may exercise its discretion to consider evidence outside the administrative record "*only* when circumstances *clearly establish* that additional evidence is *necessary* to conduct an adequate de novo review of the benefit decision." Opeta v. Nw. Airlines Pension Plan for Cont. Emps., 484 F.3d 1211, 1217 (9th Cir. 2007) (quoting Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan, 46 F.3d 938, 944 (9th Cir. 1995)). In Opeta, the Ninth Circuit adopted a non-exhaustive list of circumstances where evidence beyond the administrative record could be necessary, including:

> claims that require consideration of complex medical questions or issues regarding the credibility of medical experts; the availability of very limited administrative review procedures with little or no evidentiary record; the necessity of evidence regarding interpretation of the terms of the plan rather than specific historical facts; instances where the payor and the administrator are the same entity and the court is concerned about impartiality; claims which would have been insurance contract claims prior to ERISA; and circumstances in which there is additional evidence that the claimant could not have presented in the administrative process.

Id. (quoting Quesinberry v. Life Ins. Co. of N. Am., 987 F.2d 1017, 1027 (4th Cir. 1993) (en banc)).

11. RSL has submitted extra-record evidence attached to the Bernacchi Declaration. Dkt. 129-1. Of that evidence, the Court admits only the draft letter sent from Cyr's counsel to Dr. Gibbs for his signature, attached to the Bernacchi Declaration as

Exhibit 5, dkt. 129-10. The document is necessary to conduct an adequate de novo review because, as explained in the conclusions below, the Gibbs Letter's provenance affects its credibility and, therefore, the persuasive weight assigned to it.

12. The Court declines to admit any other evidence submitted by RSL because it is not necessary to conduct an adequate de novo review.

13. Cyr has submitted: (1) evidence to rebut the extra-record evidence submitted by RSL, dkt. 141, and (2) a supplement to the administrative record, dkt. 133, consisting of documents she argues should have been included in the administrative record filed by RSL.

14. Of Cyr's extra-record evidence, the Court admits a portion of Dr. Gibbs' deposition transcript, dkt. 141-5 (Gibbs Dep. Tr) at 76:4-6, because it directly responds to RSL's admitted extra-record evidence meant to show that Cyr's counsel wrote the letter submitted by Dr. Gibbs.

15. The remainder of the deposition transcript and Cyr's remaining rebuttal evidence attached to dkt. 141 are not admitted.

16. Cyr also submitted a supplement to the administrative record. Dkt. 133. The documents included fall into three main categories: (1) documents subpoenaed from MES Peer Review Services, which hired Dr. Burns (MES Documents), (2) emails between counsel and RSL (Emails), and (3) excerpts from RSL's Claims Manual.

17. The MES Documents and Emails are already included in the administrative record, and the Court finds it unnecessary to supplement the record with those documents.

18. The parties disagree about whether the Claims Manual excerpts are properly part of the administrative record or extra-record evidence. Cyr relies on 29 C.F.R. § 2560.503-1(m)(8)(iv) to argue the information is relevant and properly included in the AR

because it "constitutes a statement of policy or guidance with respect to the plan," but she omits an important part of the subsection that continues "concerning the denied treatment option or benefit for the claimant's diagnosis." Compare Dkt. 133 at 1-2, with 29 C.F.R. § 2560.503-1(m)(8)(iv). In any event, the Court does not find it necessary to rely on the excerpts from RSL's Claims Manual and declines to supplement the record with that document.

19. RSL requests judicial notice of a section of the California Health and Safety Code referenced in its briefing and oral argument. Dkt. 153. Cyr objects. Dkt. 155. The Court does not find it necessary to rely on the cited statute and denies the request for judicial notice. Accordingly, RSL's request to strike Cyr's objections, dkt. 156, is denied as moot.

**B. Cyr's Occupation**

20. Prior to the onset of her medical difficulties, Cyr worked full time at CTI as a Vice President. AR 376. Cyr's regular occupation is a sedentary one that requires regular cognitive engagement. See AR 1875, 1958-61.

21. RSL argues that Cyr "offered no evidence [during the administrative process] that [she] could not perform the occupation of a company vice-president." Dkt. 137 (Defs.' Resp. Br. at 9); see Tr. of Oral Arg. 44:23-25, 50:16-25. Cyr asserts that she experiences symptoms affecting her cognitive function including seizures, memory loss, speech disorder, loss of awareness, migraines, and medication side effects. Dkt. 132 (Pl.'s Br.) at 22-26. She further argues that these issues were raised in the administrative process. Tr. of Oral Arg. 54:14-23.

22. The Court finds Cyr adequately raised the issue of her cognitive function during her ERISA appeal in documentation and letters from Dr. Hrach, Dr. Glancey, and Dr. Gibbs. See AR 531-79, 788-89, 1047-49, 1464-65, 1741-50.

23. RSL's emphasis, in its briefing and oral argument, on the absence of records from Dr. Early and Neil Friedman is unpersuasive. Defs.' Br. at 7-8. Multiple physicians offered opinions about Cyr's cognitive impairments such that the question of her cognitive functioning was before RSL regardless of whether records from those providers were produced.

24. Therefore, if Cyr establishes by a preponderance of the evidence that her medical conditions have rendered her substantively cognitively impaired, then she cannot perform the material duties of her regular occupation and is disabled under the policy.

25. Additionally, Cyr is disabled under the terms of the policy if she proves that, more likely than not, as a result of her medical conditions, she is unable to perform the physical requirements of a sedentary position, including sitting most of the time, with walking or standing for brief periods, or occasionally lifting up to 10 pounds.

**C. Cyr's Medical Condition**

26. Viewing the record in its totality, the Court finds Cyr has met her burden of proving entitlement to benefits under the LTD Plan.

27. Though the Court is not obligated to give special deference to the opinions of Cyr's treating physicians, Black & Decker, 538 U.S. at 834, "courts generally give greater weight to doctors who have actually examined the claimant versus those who only review the file, especially when they are employed by the insurer[.]" Backman v. Unum Life Ins. Co. of Am., 191 F.Supp. 3d 1053, 1066 (N.D. Cal. 2016) (collecting cases). While an insurer need not provide in-person medical evaluations of its claimants, the Court finds Drs. Hrach, Glancey, Gibbs, and Deol's in-person evaluations and observations—especially those provided before RSL terminated benefits—more persuasive than the paper review conducted by RSL's Dr. Burns. See Salomaa v. Honda Long Term Disability Plan, 642 F.3d 666, 676 (9th Cir. 2011) (finding medical opinions rendered following in-person

examination more persuasive than contrary opinions from an administrator's paper-only review); Montour v. Hartford Life & Acc. Ins. Co., 588 F.3d 623, 634 (9th Cir. 2009) (finding that a "pure paper" review "raise[s] questions about the thoroughness and accuracy of the benefits determination").

28. Cyr consulted numerous doctors across specialties and disciplines, including primary care, neurology, and orthopedics. Doctors assessing her working capacity found she was unable to work due to her symptoms. In particular, Cyr's primary care physicians who saw Cyr most frequently and consistently—Dr. Hrach and Dr. Glancey—noted symptoms of headaches and seizures for years and did not waver in their recommendation that she cease work. It does appear that the medical opinions provided by Dr. Hrach, Dr. Deol, Dr. Glancey, and Dr. Gibbs after RSL terminated benefits contain changes—characterized as corrections—to previous documentation of Cyr's medical conditions. But those opinions are consistent overall with the opinions of Cyr's medical providers prior to RSL's termination of benefits. Further, the post-denial opinions submitted during the appeal process are consistent with each other, indicating independent agreement among Cyr's doctors regarding her limitations and disability.

29. The Court, however, assigns less weight to the letter signed by Dr. Gibbs and submitted by Cyr's counsel on July 22, 2022. AR 1794-96. RSL has presented extra-record evidence that the letter was drafted by Cyr's counsel and signed by Dr. Gibbs without changes. See Bernacchi Decl., Ex. 5. The Court does not question whether Dr. Gibbs agrees with the letter's contents. There is no evidence that it doesn't, and it contains his signature. But the Court is not left with the same degree of assurance that the letter reflects Dr. Gibbs' independent medical judgment—rather than counsel's advocacy—as Dr. Gibbs' other documentation, such as clinical notes or APS forms.

30. By assessing Cyr's capacity to perform only the duties of a sedentary job rather than her specific duties, including non-physical duties, RSL and its doctors failed to fully apply the standard of disability articulated in the policy, which required RSL to consider whether the Cyr could perform the "material duties of [her] *regular occupation*." AR 12 (emphasis added).

31. The record shows that RSL and Dr. Burns relied on a generic occupational description for a Vice President to then determine that Cyr's position was "sedentary." RSL then determined, based on Cyr's medical records and the Burns Report, that Cyr could perform the material duties of a "sedentary" occupation.

32. While Cyr's regular occupation did require a sedentary level of exertion, her material duties were broader, including, among other things: (1) managing various departments, (2) formulating plans and policies, (3) directing accounting functions, (4) directing budget functions, (5) planning, directing, and coordinating operational activities, (6) formulating and administering company policies, and (7) developing long-range goals and objectives. See AR 1875, 1958-61.

33. Cyr has shown by a preponderance of the evidence that she was unable to perform the material duties of her regular occupation.[3]

34. Cyr's medical records support that she suffered from several symptoms impairing her cognitive function, including seizures, dizziness, memory loss, speech difficulty, loss of awareness, migraines, and medication side effects. AR 468, 489, 531, 534, 536, 542, 544, 1184, 1717, 1728-35, 1745, 1751-53.

[3] Under the definitions in the policy, Cyr is totally disabled even if "capable of performing the material duties of [her] occupation on a part-time basis or some of the material duties on a full-time basis." AR 12. In other words, if she is unable to perform one or more material duties full-time, she is totally disabled.

35. The Court agrees with Cyr that these conditions rendered her unable to meet the cognitive demands of her regular occupation. For example, memory loss and speech difficulty affect the material duties of managing various departments and planning, directing, and coordinating operational activities. Loss of awareness impairs her ability to do nearly all work functions demanding a high level of cognition. Given the scope of cognitive symptoms and consistency with which Cyr's doctors noted those symptoms, the Court concludes it is more likely than not that Cyr was unable to perform the material duties of her regular occupation on a full-time basis due to cognitive impairments.

36. Cyr has also established by a preponderance of the evidence that she was unable to perform one or more of the material duties of a sedentary occupation.

37. Cyr's doctors regularly reported that Cyr suffered from severe pain. <u>See</u> AR 544-48, 570, 576, 1053. It is widely accepted that "disabling pain cannot always be measured objectively." <u>Saffon v. Wells Fargo & Co</u>, 522 F.3d 863, 873 n.3 (9th Cir. 2008). And although it is true that self-reported symptoms are not necessarily determinative, particularly when contradicted by objective evidence, the record does not adequately establish the unreliability of Cyr or her treating physicians.

38. Further, in both pre- and post-denial APS forms, Dr. Hrach indicated Cyr could only occasionally lift up to one pound, <u>see</u> AR 472, 987, less than the occasional exertion of up to 10 pounds of force occasionally required for a sedentary occupation,

39. Cyr's claim is supported by RSL's payment of benefits, which required its own finding that Cyr met the definition of total disability, over two decades.

40. In its briefing, RSL specifically cites Dr. Hrach's reports as the basis for finding Cyr was totally disabled. Defs.' Br. at 6. But Dr. Hrach's position did not change, and she continued to verify Cyr's disability through the termination of benefits and appeal. She

certified in 2020 that Cyr's condition had "retrogressed" and that she should "cease work." AR 469, 982. In a letter submitted after RSL terminated benefits, Dr. Hrach explained that Cyr "is in worse physical condition now than she was at the onset of her disability." AR 1717-18.

41. Further, the documentation RSL cites to justify its decision to terminate Cyr's benefits—two reports from Cyr's physicians and Cyr's self-reported activities, see Defs.' Br. at 9-10, 23, 29—does not establish that Cyr no longer had an ongoing disability. In those reports, Cyr's physicians stated that she was skiing and hiking, and Cyr reported sewing sometimes, golfing sometimes, skiing sometimes, and participating in pool therapy. Yet, RSL has never explained how Cyr's recreational activities mean she is not disabled under the terms of the policy, particularly considering that Cyr's job description requires sedentary capacity—not physical exertion. That Cyr may have skied and hiked for several hours in a day—which she denies—does not indicate her ability to perform the material duties of her occupation. See Kaminski v. UNUM Life Ins. Co. of Am., 517 F. Supp. 3d 825, 864 (D. Minn. 2021) (finding evidence of family trips was not indicative of the claimant's ability to work a full-time sedentary job); see also Demer v. IBM Corp. LTD Plan, 835 F.3d 893, 906 (9th Cir. 2016) (finding claimant's self-reported activities of daily living that "indicated some ability to engage in mental functioning" did not necessarily establish his ability to engage in "gainful occupation").

42. Similarly, Dr. Deol's note that Cyr was doing "remarkably well" does not necessarily indicate that Cyr was no longer disabled.

43. RSL did not raise Cyr's lack of credibility as grounds for denying benefits in either of its denial letters. Therefore, to the extent RSL relies on inconsistencies and post-termination revisions to show Cyr is not a reliable narrator—and may be making a false claim—the Court is precluded from considering that rationale to conclude that RSL properly terminated Cyr's benefits. Collier, 53

F.4th at 1187 (finding the district court improperly considered the claimant's lack of credibility when the insurer did not raise credibility as grounds for denying her claim for benefits). And there is no indication that Cyr's physicians—who treated her over the course of many years—found her not to be credible.[4]

44. On balance, the evidence weighs in Cyr's favor, and she meets her burden of establishing her entitlement to LTD benefits. The preponderance of the evidence shows that Cyr's diagnoses and their symptoms preclude her from performing the material duties of her occupation.

## III. Conclusion

For the reasons stated above, the Court finds in favor of Cyr. Cyr is to submit a proposed judgment no later than August 7, 2026. RSL may submit objections to the proposed judgment no later than August 14, 2026. Counsel are to meet and confer and attempt to resolve the issue of attorneys' fees and costs no later than August 21, 2026. If no resolution is reached, Cyr's motion for attorneys' fees must be filed no later than September 28, 2026. Cyr's pending motion for partial summary judgment, dkt. 76, is denied as moot.

IT IS SO ORDERED.

Date: July 15, 2026

Dale S. Fischer

Dale S. Fischer
United States District Judge

[4] Though Dr. Gibbs questioned whether Cyr was correctly diagnosed with MS, the Court interprets his question to regard not Cyr's credibility but the accuracy of the initial diagnosis.